779, Lakewood Manufacturing, v. Marcella Tamayo. Good morning, Your Honors. Counsel. I may please the Court. I am here representing Ms. Tamayo, the employee in this matter. Your name, sir? Richard Scholenberger. I'm sorry. Thank you. This is a case where there was conflicting evidence as to accident and as to causal connection. The arbitrator resolved those conflicts by making credibility determinations in favor of the employer. The commission resolved those conflicts by making those credibility determinations in favor of the claimant. An appeal was taken by the employer, couched in terms of error of law, but were really essentially a manifest weight argument. And the court interjected a legal question that is contained in Judge Hoffman's majority opinion in the R.D. field, which is, what is the effect of an arbitrator's decision when the commission decides to reverse those credibility determinations that they make? You know, we agree, as stated in the decision of Justice Hoffman, that there is some unique perspective that an arbitrator has in terms of witnessing, rather, seeing a witness's demeanor on the stand. However, the commission also has the perspective of being able to review testimony dispassionately, seeing exactly what was asked, what was answered, and is it always available to the arbitrator. But nonetheless, the law says that the commission has de novo review, and then the question becomes, how many flavors of de novo review are there? And our position is there's only one. And that is that so long as the commission's credibility determinations are supported by or not against the manifest weight of the evidence, that those determinations should be upheld. Well, did the commission, in this case, applying R.D. field, give reasons for making credibility findings? They did. There was a 12-page decision. In their conclusion, they do not specifically say that these are the reasons why we're making determinations that are contrary to the arbitrator's decision, no question. They do analyze the testimony pointing out the strengths and the weaknesses, or the evidence pointing out the strengths and the weaknesses of each in their summary of the evidence. But, Your Honor, it was correct. They do not specifically say. Well, I'm not saying that they did or didn't, but my question was, did they? They did not. They did not. But they gave reasons for their credibility determinations, did they not? They gave reasons in the discussion. They gave reasons throughout the opinion. It's a 12-page. They weigh the evidence. They talk about, certainly they review the testimony of my client and how that dovetails with the medical records, how it dovetails with the accident report that was created by the respondent. And they also explain why it is that the co-worker's testimony doesn't have the same probative value because he's otherwise distracted by the work duties that he has. They also talk about the surveillance tape and how it's. You're saying they did because you want us to uphold the commission. I'm saying that the decision on its face does provide ample findings and ample explanation for why they made these determinations in favor of my client. In the circuit court level, what was asked of me was, is there a sentence in which, without any equivocation, this is exactly why I'm doing it? No, there isn't. But in the decision itself, there certainly is ample basis to understand why they did it. It didn't say on the credibility issue we find. They didn't use that magic phraseology, but it's in the decision. That is my position on it. Well, I mean, past decisions have never said that the commission has to say here's why we are reversing the arbitrator on credibility. They've merely said they have to give sufficient explanation for their determination for meaningful review. Correct. Correct. And my belief is that this opinion contains that. It's a 12-page opinion. Exactly. You can go through it and explain why they're doing it. And that is my position. And the circuit court did not say that the commission's decision was against the manifest weight. It simply concluded because it could not find specific credibility findings within the commission's decision that it was erroneous as a matter of law. That's correct. Okay. Can I ask you then, and I'll ask your opponent as well, to try to define or put meaning, attach meaning to this phrase by the circuit court. This is at page 1 of its order. It says the court rejects defendant's argument and concludes that specific findings or explanation of the basis for a credibility determination is required as a matter of law. And what I'm trying to determine is what is it that the circuit court is saying is missing from the commission's decision here. It seems that there's a blurring of the lines between credibility determination and weighing of evidence. Credibility is a term of art in the law, and credibility can take into account, well, I should say credibility when it is attached to a witness takes into account any number of things. And the trier of fact is oftentimes in a superior position to judge credibility of a witness. The trial court here, the circuit court, what is it that it's saying here in terms of credibility determination? Can you determine that? Well, I have an opinion, and my opinion from the argument and the statements from the bench were an expectation that after the commission says I find this person more credible, there has to be an explanation because an explanation as to the factual basis for that determination. That was my impression at the time that the case was argued and to the extent that is explained here. Well, you know, if you look at the dictionary definition of credibility, it's the quality or power inspiring belief. The definition of credible is offering reasonable grounds for being believed. If an opinion is persuasive, that could be tantamount to being credible. Here the commission, it appears, provided ample basis or bases for determining that it found the evidence persuasive and the reasons why it found the evidence to be persuasive. I'm just trying to get a handle on what is meant by credibility determinations when it comes to opinions as opposed to witnesses. I frankly don't believe the court tried to make a distinction between the two. I think the thrust of the court's position was as to the draftsmanship of the decision and where an explanation for a determination should appear in a decision of the commission. I don't think there really was, they were trying to tease out any distinction between those two. You were directed to draft the order? We were both directed to submit a draft order. And I submitted a draft order and for reasons I didn't explain, the draft wasn't taken off the decision. I believe that the arbitrator agreed that my draft properly articulated what he told us from the bench. The judge asked us at the argument to submit a proposed draft order explaining what his ruling was from the bench. Yes. Just to touch briefly, although I don't know if this is necessary, if we believe that the decision contains ample basis to explain the determinations, but if for some reason the court does not agree, we had asked for a remand at the bench and that was denied, which I think would be the proper remedy in these circumstances. It's like telling you to bring your own rope to your own hanging, isn't it? It is very much like that. Unless there's another question, I think that states my case. Thank you, counsel. Thank you. Counsel, you may proceed. Thank you very much. My name is Matthew Schiff. I represent the employer, Lake Book Manufacturing. May it please the Justices and Mr. Schellenberger, the bottom line in this case is that the arbitrator correctly found that the petitioner failed to prove accidental or causal connection. The workers' comp commission reversed and the circuit court found that that finding was contrary to law and against the manifest way to the evidence. It was not a reasoned decision, whereas the decision of the arbitrator was. He reinstated the decision of the arbitrator, so what you have before you is a reasoned decision. Let's go through the facts. The prior condition of Ms. Tamayo, well documented. Back in 1983, beginning with her pregnancy, she had low back pain. She was treated with a chiropractor, wearing a back brace. Her personal physician, Dr. Dutore, put her on naproxen, Celebrex. In 2002, she had a diagnosis of sciatica, exactly what we're talking about here. Spondylolisthesis. An MRI showed her discs were desiccating, foraminal narrowing. She was losing time from work. By 2009, she was missing a lot of time from work. Her back was getting worse. She was feeling radiating pain, low back pain, daily, continuous. In 2010, immediately prior to this alleged accident, she's on hydrocodone, on naproxen, on ibuprofen 800, which is the prescription strength. Curiously, on direct exam, Tamayo denied that she had taken any medication for her back the prior year. Let me just add. I'm looking at the order, the circuit court's order, and is there any place in there that the circuit court finds that the decision of the commission is against the manifest weight? I didn't see that either. He just reversed on credibility. He never got into the merits of it. As I understood it, he said the arbitration decision is a reasoned decision that I can follow. There's nothing here for me to compare because the commission decision isn't a reasoned decision. It doesn't tell me what. That's not in the order. The decision of the commission is therefore reversed and the decision of the arbitrator is reinstated. Does the record contain a transcript of the circuit court's proceedings? I wish it did. It doesn't. And they're not always taken, even. No. And I wish my proposed order, which laid everything out, had been the one that got in there first, but it didn't. You won the case, but not the proposed order. Not with the proposed order I would have wanted, but I think we still have enough because he does adopt the arbitrator's decision. So that becomes the order. And what he says is that, you know, I have inconsistencies here that the commission doesn't address, and yet they reverse on. The Petitioner testified she was doing her usual work when she twisted and fell back pain. You'll note the word twist does not appear in any medical record. She never tells any doctor that. That's her testimony only at trial. Her pain was 10 out of 10. And I've asked this question before at trial, and I've never gotten that before. Ten out of ten. I said, you mean like childbirth? She's had a child? Yeah. Worst pain imaginable? Yeah. These are the answers I'm getting. She could barely walk. Her coworker, Brusen, who's working with her for several hours that day, face-to-face, including the last hour of the day, says she looks fine. She has no complaints. They're talking about what they're going to do in the upcoming three-day holiday weekend. I mean, that is not consistent. Well, and on the other side of the coin, we've got apparently the commission found the claim incredible with her testimony of the events and her account of the injury. Apparently Dr. Sun, who testified on behalf, unless I'm missing something, for the claimant, provided the causal connection. You and Dr. Lamme offered a completely opposite opinion. So why is this not just a classic manifest weight and whether there's sufficient evidence to support the commission? Because Dr. Sun's opinion is based on facts outside of the record. He didn't have any of the medical records from before. And he says his opinion is speculation. That takes it outside of the realm of an opinion that the commission can rely on. I can switch and move on to Dr. Sun if you want, but there are more factual things that I was going to get to first, whatever the Court would prefer. He didn't base it on any medical records? He did not see the prior MRI. He said there wasn't one. In fact, there was one, and it showed that you already had these conditions. He didn't see Dr. DeTore's records, which showed that she was on the same medication before. He was surprised. Didn't Sun give a deposition, though, in which he references the MR findings? Yeah. On cross-examination, I show it to him. Because, well, candor, he doesn't think there is one. I'll show him that, in fact, there is. And he says, yes, the condition is worse now, 7 years later, but it's there. It's already there. It's already there. She has the sciatica. He believes she never had this before. The records show she had it continuously. Is that what he really said? The quotation seems to be, and she does have some low back pain before, but the fact is that she never stopped working before. Yes, which is also. That's what he testified to. Contradicted by the record that shows she did get taken off work for low back pain. That was something she didn't know that Lammy did know, that she had been removed from work because of sciatica. In this case, does she have a theory it was an aggravation of a pigmentation? I don't think it's an aggravation. I don't think anything happened at all. I understand that. But what was the theory of the claimant? The theory of the claimant was she did something that she does every day, this twisting motion, and it caused back pain and leg pain. So it's characterized probably as an aggravation. She never said that it got, her condition got worse because she claimed, you know, she was fine. We know her condition was worse because we know that's true. Why are they here? Why did they file a complaint if nothing happened? Obviously they had a theory, right? They have a theory that she, her current condition of ill-being that she claims she can't work at was caused by this single event. And the commission bought it. Sir? And the commission bought it, right? Yeah, the commission bought it even though she had been working continuously without a missed day of work since the accident. No doctor, all the doctors who saw her said she could work, except for Dr. Sun who sees her and says after she's voluntarily taken herself out of work that she can't do the work that she's been doing for five months. Again, he does this without the benefit of any of the work records, any of the medical records, anything. And more importantly to me is this clip of her leaving. So what you're really saying is that there's not a sufficient basis for Dr. Sun's opinion here. And so it should not be given the weight that was given by the commission. Exactly. It's pure speculation and on cross-examination he pretty much admits that, that he doesn't know what she could do before, what she could do after. He thinks she hurt herself lifting. That's what he testified to. That's not what she testified to. That's not what's in any medical record. He just doesn't know. He wasn't provided with an adequate basis to give an expert opinion. Out of curiosity, at the circuit court level, the argument that was made that you advanced was Manifest Weight argument, I'm assuming. Manifest Weight and the question of law that you can't have an opinion rest on speculation, conjecture. It just isn't the basis for writing an opinion. Well, that would be the basis for the opinions that were proposed. Right. But as to the credibility findings, just getting back to that again, that found its way into the circuit court's order, was that argued? Did you advance that, that the commission did not make specific credibility findings? We argued that the commission made conclusions without evidentiary findings, that the evidentiary, for them to say that the video isn't her. It makes no sense. They've never seen her before. You have her not taking the stand to rebut it when the arbitrator invites her to. I don't think they said it wasn't her. I think they just said that there was a clear it was her or whatever. How would they know? From the evidence, but go ahead. How would they know? They've never seen her before. The people who have say it is her. Let's start with Sorrentino, who works with her for four years, says that's her. Well, still, I'm sorry, but I want to get back to what you were advancing, what theory. And is it that you were saying that the opinions, the medical opinions that the commission relied on were not properly supported by accurate factual information? Yeah. The medical opinion that they adopted of Dr. Sun was factually insufficient. It had no history. It had no basis. It assumed an accent that was different than the one that was testified to. And when I pressed him on it, he used and adopted the word speculation. Speculation, as we know, means it's not an acceptable opinion. It can't carry the weight. It could be afforded no weight. It could be afforded no weight. So it was a matter of weight. Yeah. It's a nullity, essentially. It's a guess. It's conjecture. It's not a basis for an opinion. It can't carry the weight that the Petitioner has to carry in one of these cases. And one of the most important pieces of evidence was that security video, which is her walking out, looking lackadaisical and just fine, identified as her by Sorrentino, the Director of Security, with a good reason to know. She is given the invitation by the arbitrators that that looks like you. Do you want to stipulate that that's you? Do you want to take the stand and rebuttal? No. She doesn't want to do that. I think that's a hell of an admission by omission, by refusing to take the stand to even say, no, that's not me. It's her. And she's fine. And she's claiming she has 10 out of 10 pain. She has still not reported this to anybody. She says in her accident report she told Brewson, but she testified she didn't, and Brewson said he not only wasn't told anything, but he didn't see anything. What does she do with this 10 out of 10 pain? She drives home and has a three-day weekend, during which time, even though she's under active care for her back, she doesn't see a doctor, she doesn't do anything. She's got pain that she says is equal to childbirth and does nothing until Tuesday morning. Tuesday morning, she drives into work with 10 out of 10 pain and says, I hurt myself back on Friday. She knows that's a rule. Company rule says you have to report any accident, no matter how minor, before you leave the plant. She knew the rule, and she knew she violated it. Counsel, your time is up. Okay, I'm sorry. My time is up, and thank you very much. Thank you. Thank you, Counsel. Counsel, you may report. Very briefly, thank you. The theory of the case was that there was an aggravation of a pre-existing condition, and the record contains Dr. Sun's statement that he reviewed with this client that she had a prior history. And the commission's decision reviews the prior medical history records and saying, look, it's either remote in the past, episodic, and certainly the stuff that was leading up to the accident date involved a different part of the body. It wasn't a blowback. It was a mid-back complaint. And he says, having reviewed that, she was engaged in this activity. She started having pain, and that's the basis of my opinion that she aggravated a pre-existing condition. Counsel says that Dr. Sun admitted that he was speculating. He did not. What he was asked is, don't you need more details about what this person's work was in order to offer his opinion? He says, look, I know what I know. He doesn't agree that he's speculating. He's saying, look, this is the information that I have, and that's the information that supported his opinion. We think the decision is supported by the evidence and should be affirmed or reinstated. Counsel is making an argument that we've got this surveillance tape, we've got this testimony of 10 out of 10 pain, and we show her leaving the factory with apparently no hindrance, and three days go by, and then she comes back, and she has equivalent to childbirth pain. Well, the testimony is that at the moment that it happened, and this is an unwitnessed testimony, she said my pain was 10 out of 10. She does not say in the testimony that my pain was 10 out of 10 throughout the day. So there is no evidence that when she left work that day that my pain was 10 out of 10. There is surveillance that lasts seconds of an unidentified woman, or at least a woman whose face is not depicted, leaving the workplace, and there's no indication on that video that the person is injured. Well, now, the commission never saw the video, right? Sure they did. Well, they did. Oh, yeah. Yeah, that was made part of the record, and that was reviewed as part of the case. And how did they know it was not her? They came to the conclusion that it was so brief, and the fact that the client's face, that the video, the person in the video's face was not depicted, that they did not believe that Mr. Sorrentino could identify the person in that video as the petitioner. He didn't really. What did he say? I think it's her, but it's not a great film, is what he said. That was his testimony. He didn't say, yes, it's her. I think it's her, but it's not a great video or great picture. So the devil's in the details. On a review of what Ms. Tamayo actually said, counsel is incorrect that she said, I was in 10 out of 10 pain worse than childbirth from the moment it happened until the moment I went back to work on Tuesday. She said, when it happened, I was in terrible pain. We have this video of an individual leaving, and it's an equivocal statement regarding the identification. The commission didn't accept it. The commission had ample basis to believe her testimony that she was injured. She repeatedly described how the accident happened, and we think the commission properly made a determination in her favor. Okay. Thank you, counsel. Thank you, counsel, both, for this argument this morning. It will be taken under advisement a written disposition shall issue.